DARE, Etc v I O O F No 108, et

Ohio Appeals, 1st Dist, Butler Co
No 431. Decided Jan 23, 1930

Shively & Holmes and C. W. Elliott, Middletown, for Dare, etc.
P. P. Boli, Hamilton, for Odd Fellows.

ROSS, J.

The evidence presented to us shows that Little lived by himself, was eccentric, and was unable to take care of himself. There is evidence that the Probate Judge had stated that he was going to appoint someone to take care of Little. Little's father had been an Odd Fellow, and had told him to go to the Odd Fellows if in need. The evidence further shows that Little consulted a Mrs. Elwell, a cousin, asking her if she knew of some organization which would provide for him, and that she suggested the Odd Fellows, and that he asked her to send them to him.

The evidence discloses that they entered into a contract, by which it was provided that Little should be taken care of for the rest of his life; that he would receive medical attention in case of sickness, and a nurse if the same was found necessary; that Little was to receive twenty-five dollars each month, and that if said sum was found insufficient, the amount should be increased to whatever sum was found necessary for the proper keeping of Little. He was insured permanent residence in the premises conveyed to the Lodge as long as he should live, and assured all rights therein as if the same were his except that he should not convey, incumber, or damage the same. The Lodge was to make all necessary repairs on the property, which were found

**524**

necessary for the comfortable enjoyment of said property by Little. It was further provided that a person suitable and agreeable to Little should be appointed, who would daily inquire, or as often as conditions demanded as to his need and comfort. It was further provided upon his death, the Lodge would pay his funeral expenses and erect a suitable headstone upon his grave. In consideration of these promises on the part of the Lodge, Little did convey the title to the property described in the amended petition to the Lodge.

The evidence shows that the Lodge performed its agreement to the letter, to the entire satisfaction of Little, and that it furnished him a proper funeral as agreed.

It is true that Little was eccentric, but not more so than many men of similar circumstances and age. His possessions were not large or valuable. He sought a bargain with the Lodge, which required more than simply an annuity. It included care and attention. The contract is an executed contract. It was carried out to the entire satisfaction of both parties. The lodge did even more than it was required. This executed contract is now sought to be rescinded and cancelled, by persons whose only interest in the matter is that of more or less remote heirs at law.

The evidence in our opinion shows that John Little knew exactly what he was doing. We quote from the evidence as follows:

"(Mrs. Mary Elwell, page 103, record.)

"A. Well, after Mr. Little's cousin's death her nieces asked me to dispose of her things and I was down to the house several times in regard to that, and one day when I was there Mr. Little said to me, "Mrs. Elwell, there are several people want to buy my place, but he said, "I don't want to sell it to them; they will get tired of me and they will send me away". And there was one man especially who did insist on him letting him have the place. He said, "No, he will get tired of me and send me away and I want to stay here as long as I live." And he walked the floor, and he said, "I only have nine dollars and a few cents in the bank and I am not able to work, and what will I do? What will I do? and he repeated. Then the next day I went down he repeated the same thing to me. So I began to think and think how I could help the man, and I said, "Mr. Little was your father a Mason? He said no. He said he was an Odd Fellow, and "Father said the Odd Fellows would do whatever they promise to do." And I said, "I wonder if they would take charge of you." And he studied and studied the matter over, and he said, "Well now, I wish you would send some of the men down to talk to me." I said, "Mr. Little, who would you like me to send?" He said, "You name some of the men over." I did, and among the names was a Mr. Nagle, and he said, "Yes, I would like to have Fred Nagle, I have known him from a boy; he was always

a good boy, and I knowed his father." Then I mentioned Mr. McShera's name, and he said, "Yes, I would like to have him because I know him pretty well and he comes down here to look after the telephone." So I spoke to the men and they went down."

(Mrs. Mary Elwell, record, page, 102)

"A. I did, and I went to him after he took the pen in his hand and said, "If this is not your wish, don't sign it; it's not too late yet." and he said, "It is just what I want to do."'

Much has been said about the failure of consideration, upon the theory that the Lodge was not bound. We think this plea rather strained in its effect, and wholly beside the issue, in that John Little received what he contracted to receive in full measure.

This is not a case of an executory contract and a lodge member seeking to enjoin a contemplated action upon the part of the Lodge which would be detrimental to its interests. The contract was mutually beneficial and peculiarly effective in easing the mind of this aged man from apprehension of neglect and suffering.

Judgment will be entered for the defendants.

Cushing, PJ, and Hamilton, J, concur.